By the Court.—McAdam, J.
The complaint sets forth that plaintiffs John Berenberg Gossler & Co., of Hamburg and Schulz & Ruckgaber of New York, for their common advantage, are engaged in business. That in February, 1890, they opened a credit for defendants, J. H. Lau & Co., of New York, to be availed of by Braun & Bloem, of Dusseldorf, Germany. Braun & Bloem are manufacturers of blasting caps, and sell goods to defendants. These are paid for by plaintiffs’ accepting and paying the manufacturers’ drafts accompanied by invoices and bills of lading. Defendants agreed to provide, previous to the maturity of said drafts, sufficient funds to meet the same, with a commission of one per cent.
Furthermore, all goods shipped, and the proceeds thereof, the bills of lading and the marine insurance (which defendants expressly agreed to secure) were pledged with plaintiffs as collateral security, with power to dispose of them at their discretion.
The defendants finally expressly guaranteed that any bills of lading and invoices accompanying drafts would be genuine and that they would represent actual shipments.
Braun & Bloem made a shipment, drew a draft for some marks—13,000—which was accompanied by an *362 invoice of blasting caps and a bill of lading, and plaintiffs paid the draft. The caps were in fact shipped but lost at sea. Defendants refused to reimburse plaintiffs for the draft paid. A tender of the shipping documents and a demand were made before action begun.
The counter-claim pleaded, aided by the previous allegations of the answer to which it refers, alleges in substance : (1) That the drafts or bills to be drawn in pursuance of the credit were to be accompanied by the usual bill of lading showing the shipment of such merchandise to the amount drawn upon such credits. (2) That, according to the tenor and true intent and meaning of the agreement, the plaintiffs were not required to, and were not authorized to, accept any draft or bill of exchange on account of the defendants, or under said credit, except such bills as should be accompanied by an invoice and the usual and ordinary bill of lading, showing the shipment of the merchandise for the purchase price of which the bill of exchange was given, in the usual and ordinary manner, and without any qualification as to the mode of shipment, and without any limit of the usual liability of carriers -under bills of lading. (3) That, for several years prior to the opening of the credit referred to, the defendants had received numerous similar credits which had been used for the purchase of blasting caps from Braun & Bloem, which had been invariably shipped to defendants by a clean and unqualified bill of lading, which, in every case, accompanied the drafts which were accepted in pursuance of said letter of credit, and plaintiffs well knew that Braun & Bloem had no right or authority to receive for any shipment of blasting caps, any bill of lading stating the shipment to be made on deck or at shippers’ risk. (4) That on the 10th of April. 1890, defendants purchased of Braun & Bloem 40 cases of blasting caps to be shipped from Hamburg *363 to the port of New York, for the price of 13,300 marks. (5) That Braun & Bloem, wrongfully and in violation of their duty, received and accepted for the same, a bill of lading, which stated, in substance, that the caps were to be carried on deck at shippers’ risk; whereas they should have been shipped under an ordinary clean and unqualified bill of lading; but that Braun & Bloem drew the bill of exchange referred to in the complaint, and attached thereto the said qualified bill of lading so received by them. (6) That plaintiffs carelessly and negligently, and contrary to the' true intent and meaning of their agreement, and in violation of their duty, accepted the said bill of exchange with the said qualified bill of lading attached thereto without lawful right or authority so to do. (7) That insurance upon said blasting caps was duly applied for by the defendants, and the same was written as a risk under their open policy, according to their agreement with plaintiffs. (8) That the insurance company which issued the policy now claims that, by reason of the manner in which the same was shipped, the policy did not attach, and that no liability was incurred by the insurance company, and, on that ground, refuses payment under the policy. That defendants had no knowledge or notice prior to the loss of the caps that the same were shipped on deck or in any other than the usual way and by the usual bill of lading. (9) That plaintiffs wrongfully accepted said bill of lading and bill of exchange and carelessly and negligently omitted to notify the defendants of the manner in which the goods were shipped, so that the defendants might have had the value thereof and their profits in the purchase of the same covered by insurance upon the goods as on deck at shippers’ risk. (10) That if the goods had arrived in the port of New York in due course the defendants would have realized thereon a large profit, to wit, §2,108.64. (11) That by reason of the manner *364 in which they were shipped the insurance has been lost, and the defendants have lost their said profits. (12) The defendants demand judgment for the dismissal of the complaint and for the above mentioned sum against the plaintiffs.
The demurrer was upon three grounds: 1st, That the counter-claim does not state facts sufficient to constitute a cause of action. 2d. That it is not a counterclaim of the character mentioned in section 501 of the Code of Civil Procedure, in that it is not a cause of action arising out of the contract or transaction set forth in the complaint, as the foundation of plaintiffs’ claim, or connected with the subject of the action. 3d. That the counter-claim is not of the character specified in said section 501, in that it does not appear to be an action on contract other than that set forth in the complaint and existing at the commencement of the action.
The demurrer was sustained at special term. The appeal is from the interlocutory judgment entered thereon.
Construing all the allegations of the answer as favorably to the defendants as the rules permit, the answer merely shows that the plaintiffs should not have advanced their money on the draft without first obtaining clean bills of lading, without any qualification whatever. The plaintiffs were not the shippers of the goods, did not obtain the bills of lading from the carrier, but from Braun & Bloem, from whom the defendants received the goods. The plaintiffs were not the agents of the defendants, in the sense that imposed on them the duty of seeing to the manner of shipment of the goods or to the phraseology of the bills of lading, or of communicating to the defendants the mode of shipment or contents of said bills of lading.
All these and such like things were matter of concern between Braun & Bloem, on the one hand, and the de *365 fendants on the other. There being no duty, and consequently no breach, the defendants could not have suffered any damage from any act or omission of the plaintiffs in the premises, and hence the counter-claim alleged no cause of action against them. For these reasons, and without considering the.other objections urged to the defendants’ answer on the ground that it contains conclusions instead of facts, the demurrer was properly sustained, and the interlocutory judgment entered thereon in favor of the plaintiffs must be affirmed, with costs.
Sedgwick, Ch. J., and Freedman, J., concurred.